UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ENDO VENTURES UNLIMITED
COMPANY, OPERAND PHARMACEUTICALS
III LIMITED, and PAR STERILE PRODUCTS
LLC,

            Plaintiffs,

v.

            Case No. 23-cv-0299-bhl

NEXUS PHARMACEUTICALS INC,

            Defendant.

## ORDER GRANTING MOTION TO DISMISS

      On March 5, 2023, Plaintiffs Endo Ventures Limited (Endo) and Par Sterile Products, LLC (Par Sterile) filed this lawsuit against Defendant Nexus Pharmaceuticals, Inc. (Nexus), alleging that Nexus infringed their rights under two patents related to the administration of a drug, ephedrine sulfate, to patients under anesthesia. (ECF No. 1.) After Nexus moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and, in the alternative, for improper venue under Rule 12(b)(3), Plaintiffs responded by filing an amended complaint in which they corrected Endo's name, added a third plaintiff—Operand Pharmaceuticals III Limited (Operand)—and attempted to address the jurisdictional issues raised by Nexus. (ECF Nos. 18 & 25.) Nexus again moved to dismiss. (ECF No. 30.) Because the Court agrees that personal jurisdiction is lacking, Nexus's Rule 12(b)(2) motion will be granted. Given this ruling, the Court will not address Nexus's venue arguments.

### FACTUAL BACKGROUND[1]

      Plaintiff Endo is an Irish company with offices in Dublin, Ireland. (ECF No. 25 ¶3.) On May 31, 2023, Endo transferred part of its business to Plaintiff Operand, which is also an Irish

---

[1] This Background is derived from Plaintiffs' amended complaint, (ECF No. 25), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). It is also derived from the jurisdictional affidavits and exhibits filed by Plaintiffs and Nexus in their motion to dismiss filings.

company. (*Id.* ¶¶4–5.) Plaintiff Par Sterile is a limited liability company organized and existing under Delaware laws with its place of business in New Jersey. (*Id.* ¶6.) Par Sterile is an affiliate and sublicensee of Operand. (*Id.* ¶¶14, 16.)

Operand owns a New Drug Application (NDA) for ephedrine sulfate injection in glass vials. (*Id.* ¶17.) The Federal Drug Administration (FDA) approved this NDA on October 16, 2020 and Par Sterile began marketing the vials in March 2022. (*Id.*) Operand is also beneficial owner of a supplement to the NDA, covering ephedrine sulfate injection in prefilled syringes. (*Id.* ¶18.) The FDA approved Operand's supplement to the NDA on April 22, 2022. (*Id.*) The vials and syringes produced pursuant to the NDA and its supplement consist of ready-to-use formulations of ephedrine sulfate without the need for further dilution which are employed to treat hypotension occurring in connection with anesthesia. (*Id.* ¶19.)

Operand is also the exclusive licensee of two patents, U.S. Patent Nos. 10,869,845 ('845 Patent), issued in December 2020, and 11,491,121 ('121 Patent), issued in November 2022. (*Id.* ¶¶1, 13–16.) Plaintiffs' ephedrine products were not commercially available until the effective filing date of these two patents. (*Id.* ¶20.)

Defendant Nexus is a corporation organized and existing under Illinois law with its principal place of business in Lincolnshire, Illinois. (*Id.* ¶7.) Nexus is in the business of developing, manufacturing, marketing, and distributing pharmaceutical products around the United States, including in the Eastern District of Wisconsin. (*Id.* ¶8.) In addition to its Illinois operations, Nexus has a facility in Pleasant Prairie, Wisconsin. (*Id.* ¶10.) Nexus manufactures the products at issue in this lawsuit solely in Italy. (*Id.* ¶30.)

In April 2020, the FDA approved Nexus for an NDA that also relates to ephedrine sulfate injections in glass vials. (*Id.* ¶22.) On August 17, 2021, Nexus filed a complaint in the District of New Jersey seeking a declaration that its ephedrine sulfate products do not infringe the '845 patent. (*Id.* ¶23.) The parties ultimately settled that dispute. (*Id.*) After the settlement, Nexus filed a supplement to its NDA, seeking approval to market ephedrine sulfate injections in pre-filled syringes. (*Id.* ¶24.) On March 1, 2023, the FDA approved the supplement to Nexus's NDA. (*Id.*)

When Nexus later declined to provide confidential information about its ephedrine sulfate products to them, Plaintiffs filed this lawsuit. (*Id.* ¶25.) Plaintiffs bring two patent infringement claims against Nexus for infringement of the '845 and '121 Patents. (*Id.* ¶¶31–55.) They also seek a declaratory judgment, permanent injunction, and monetary damages. (*Id.* at 11.)

In August 2019, Nexus began a ten-year project that included building a manufacturing facility in Pleasant Prairie, Wisconsin. (ECF No. 33-5 ¶8.) As of June 30, 2023, however, Nexus has not manufactured any drug products for commercial distribution in the Pleasant Prairie facility and has not derived any revenue from operations at that site. (*Id.* ¶¶9–11.) Nexus also leases a warehouse in Pleasant Prairie but does not store products in the warehouse and does not derive income from activities there. (*Id.* ¶12.) All "activities related to the preparation and submission of Nexus's" NDA were performed in Illinois and all products produced under the NDA are manufactured in Italy. (*Id.* ¶¶18, 19.) No Nexus ephedrine products were imported into or sold in the United States before March 5, 2023. (*Id.* ¶¶26, 28.)

## LEGAL STANDARD

Nexus seeks dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). Rule 12(b)(2) governs a defendant's challenge to a federal court's personal jurisdiction. *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022). Rule 12(b)(3) relates to venue challenges. *In re Micron Tech., Inc.*, 875 F.3d 1091, 1096 (Fed. Cir. 2017). Although this Court is ordinarily guided by precedents of the Seventh Circuit, in the patent context it must look to Federal Circuit law "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (internal quotations marks omitted) (quoting *Avocent Hunstville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

Where "the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials . . . a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (quoting *Avocent*, 552 F.3d at 1329). As such, pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *Autogenomics*, 566 F.3d at 1017. That said, "[a]lthough we must resolve factual conflicts in [Plaintiffs'] favor, [Plaintiffs are] entitled to only those inferences that are reasonable." *Id.* at 1018 (citing *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006)).

## ANALYSIS

Nexus moves to dismiss Plaintiffs' amended complaint under both Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. As to the first point, Nexus contends that this Court does not have either general or specific personal

jurisdiction over it. Plaintiffs insist otherwise. Because the jurisdictional facts existing at the time Plaintiffs first filed suit on March 5, 2023 are insufficient to establish personal jurisdiction over Nexus, the motion to dismiss will be granted. Given the Court's ruling on the personal jurisdiction issue, it need not reach Nexus's arguments concerning improper venue under Rule 12(b)(3).

I.  **This Court Cannot Exercise Personal Jurisdiction Over Defendant Nexus.**

Determining whether this Court has personal jurisdiction over Nexus is a two-step inquiry. First, the Court must determine "whether [the] forum state's long-arm statute permits service of process." *Autogenomics*, 566 F.3d at 1017 (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Second, it must analyze "whether assertion of personal jurisdiction violates due process." *Id*. (quoting *Core-Vent*, 123 F.3d at 1458). Under Wisconsin's long-arm statute, Wis. Stat. § 801.05, these steps essentially merge into one. Section 801.05 "has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) (quoting *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990)). Accordingly, this Court may exercise personal jurisdiction over Nexus if it finds that doing so comports with due process. *See id.* ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process.").

Personal jurisdiction comports with due process if it is established either generally or specifically. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction exists in any forum in which the defendant is "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). If general jurisdiction exists, the defendant can be sued in that forum regardless of the subject matter of the litigation. *See Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). Specific jurisdiction, on the other hand, "focuses on the relationship among the defendant, the forum, and the litigation." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375–76 (Fed. Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). It exists where the defendant has sufficient contacts with the forum state related to the dispute at issue. *See Walden*, 571 U.S. at 284–85. The Court will address each potential basis for personal jurisdiction in turn.

### A. The Court Does Not Have General Jurisdiction Over Nexus.

Nexus is a corporate legal entity, not an individual. In determining where an incorporated entity is at home, courts primarily look to the entity's state of incorporation and the location of its principal place of business, usually its headquarters. *See International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945); *Ford*, 592 U.S. at 358–59. An entity may also be at home, however, in another jurisdiction—but only if the entity maintains contacts with that additional state that are sufficiently "continuous and systematic" to render it "essentially at home" there. *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Nexus insists it is not subject to general jurisdiction in Wisconsin. It notes that its principal place of business and state of incorporation are both in Illinois and contends it is not otherwise at home in Wisconsin. (ECF No. 33-1 at 16–19.) It acknowledges having broken ground on a facility in this state but emphasizes that it has yet to manufacture products in Wisconsin and derives no revenue from that facility. (*Id*. at 9.) It similarly notes that, while it also leases a warehouse in Pleasant Prairie, it derives no revenue from that site, either. (*Id*.)

Plaintiffs, on the other hand, characterize Nexus's connections with Wisconsin as "pervasive" and argue that Nexus has "held itself out as having a strong affiliation with Wisconsin." (ECF No. 34 at 7.) Plaintiffs point to Nexus's displaying of the address of its Pleasant Prairie facility throughout its website and its use of language on the website highlighting the importance of the facility. (*Id.*) Plaintiffs also invoke Nexus's $100 million investment into the facility, along with announced plans for substantial additional investments in Wisconsin in the future. (*Id.*)

The record does not support a finding that Nexus is subject to general personal jurisdiction in this Court. It is undisputed that Nexus's place of incorporation and principal place of business are in Illinois, not Wisconsin. (ECF No. 25 ¶7.) And, Plaintiffs' assertions notwithstanding, Nexus's contacts with this state are not sufficiently pervasive to make it fairly considered Nexus's home. Nexus is an Illinois company that engages in interstate commerce across the country, including Wisconsin. (*Id.* ¶8.) This hardly makes it at home in Wisconsin. As the Supreme Court explained in *Daimler*, modern corporate entities "operate[] in many places [and] can scarcely be deemed at home in all of them." 571 U.S. at 139 n.20. While Nexus has apparently invested substantial money ($100 million) into a Wisconsin-based facility in Pleasant Prairie facility and

employs a not insignificant number of people (75) in the state, those facts are insufficient to render Wisconsin its additional home, along with Illinois. Nexus does not utilize Wisconsin as its primary manufacturing location; the record confirms that, as of the date this case was filed, Nexus had yet to manufacture any product or derive any revenue from within this state. (ECF No. 33-5 ¶9.) Indeed, Plaintiffs themselves affirmatively allege that the products at issue are manufactured in Italy. (ECF No. 25 ¶30.) Nexus reports that no ephedrine products were even imported into Wisconsin prior to Plaintiffs' filing of this case. (*See* ECF No. 33-5 ¶¶26–27.) Under *Daimler*, these facts are not sufficient to create the extraordinary case where Nexus's Wisconsin operations render it at home there. *See Daimler*, 571 U.S. at 138; *cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–49 (1952) (holding general jurisdiction appropriately exercised over foreign corporation whose president ceased foreign operations during World War II and moved to Ohio where he maintained the company's activities).

Nor can the Court assert general jurisdiction by speculating about the potential future growth of Nexus's connections to Wisconsin. It is well-settled that jurisdiction is decided based on the jurisdictional facts existing when the initial complaint was filed. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). Plaintiffs' insistence that Nexus plans to invest hundreds of millions more and employ more than 400 people at the facility are irrelevant to this analysis. *See Brocade Comms. Sys., Inc. v. United States*, 120 Fed. Cl. 73, 80 (Fed. Cl. 2015) ("When an action depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all' the claim is unfit for judicial review.") (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985)).

Plaintiffs rely on a pre-*Daimler* Northern District of Illinois case, *Genocide Victims of Krajina v. L-3 Servs., Inc.*, 804 F. Supp. 2d 814, 820 (N.D. Ill. 2011), to argue that a defendant's choice to advertise, maintain a large number of employees, and conduct "vast amounts" of business in the forum state supports general jurisdiction. (ECF No. 34 at 8.) In Plaintiffs' view, because Nexus employs 77 of its 170 people at the Wisconsin facility, has sent agents to conduct and solicit business, and has a designated agent for service of process here, like in *Genocide Victims*, general jurisdiction is established. (*Id.*) But, as noted above, *Genocide Victims* predates *Daimler*, which marked a significant realignment in general jurisdiction caselaw. Moreover, in *Genocide Victims*, the defendant's contacts with the forum state were much more significant than Nexus's here. The defendant in that case had approximately one hundred employees in its Illinois facility; conducted

tens of millions of dollars' worth of business in Illinois in each of the past three years, including $2 million in sales from the division at issue in the case; regularly sent agents into Illinois to conduct and solicit business there; advertised in national publications regarding its Illinois facility; told eight companies that it "may have offices in Illinois"; attended trade shows in the state over several years; and regularly contracted with Illinois businesses. *Id.* at 820. Nexus's employment of 77 people in Wisconsin hardly makes it at home in this state. *See Daimler*, 571 U.S. at 139 n.20. And as *Genocide Victims* itself acknowledged, "[g]eneral personal jurisdiction is assessed on a case-by-case basis taking into account the nature and substantiality of all the contacts of the defendant." 804 F. Supp. 2d at 821. Considering the case here, general personal jurisdiction has not been established on these facts.

Plaintiffs also repeatedly cite *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023) to argue that exercising personal jurisdiction over Nexus would not offend "traditional notions of fair play and substantial justice." (ECF No. 34 at 9.) But *Mallory* involved a consent to jurisdiction scheme that does not exist under Wisconsin's statutes. *See Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 73 (Wis. 2017). *Mallory* is therefore inapplicable. Because Nexus is not at home in Wisconsin, the Court does not have general jurisdiction over Nexus.

### B. The Court Also Lacks Specific Jurisdiction Over Nexus.

Specific jurisdiction "must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Grober*, 686 F.3d at 1346 (quoting *Autogenomics*, 566 F.3d at 1017). There are three essential requirements: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)). The first two factors comprise "minimum contacts," while the third factor ensures that any jurisdiction exercised "does not offend the traditional notions of 'fair play and substantial justice.'" *Apple*, 30 F.4th at 1375 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)). Plaintiffs have the burden of establishing minimum contacts under the first two factors. *Coyle*, 340 F.3d at 1350. If Plaintiffs meet that burden, Nexus must show that the exercise of jurisdiction over it is unreasonable. *See id.*

Nexus argues Plaintiffs have failed to allege sufficient facts to support specific jurisdiction. (ECF No. 33-1 at 22.) Specifically, Nexus argues that Plaintiffs' claims do not arise out of and are unrelated to Nexus's activities in this district. Nexus offers sworn testimony that it had not made, used, sold, offered for sale, imported, or otherwise prepared ephedrine sulfate injections in Wisconsin as of the date of the complaint, March 5, 2023. (ECF No. 33-5 ¶¶12, 19–22, 26–27.) In response, Plaintiffs counter that Nexus "is 'purposefully [availing] itself of the privilege of conducting activities' in Wisconsin," satisfying the first factor. (ECF No. 34 at 13 (alteration in original) (quoting *Burger King*, 471 U.S. at 475).) They also argue that because Nexus "prepared, filed, and received FDA approval" for the New Drug Application, Nexus established a plan to market and sell the drug nationwide, including in Wisconsin. (*Id.* (citing *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016).)

Plaintiffs have not met their burden of establishing specific personal jurisdiction over Nexus. The minimum contacts analysis requires evidence that Nexus "purposefully directed" infringing activities in the forum and the resulting litigation results from injuries that "arise out of or relate to" those activities. *Acorda*, 817 F.3d at 759 (quoting *Burger King*, 471 U.S. at 472–73). But the record confirms this is not the case here.

Plaintiffs rely heavily on *Acorda*, insisting that Nexus has purposefully directed infringing acts in Wisconsin because it has "confirmed its plan to" sell and market its infringing product in this state by filing the NDA. (ECF No. 34 at 13.) They insist Nexus is thus like the defendant in *Acorda,* which was found to have confirmed a "plan to commit real-world acts" in the forum state. (*Id*.) Plaintiffs' reliance on *Acorda* is unavailing because the infringement claims are different by their very nature. In *Acorda*, two brand-name drug manufacturers (Acorda and AstraZeneca) each brought patent-infringement lawsuits against a generic drug manufacturer (Mylan) in the District of Delaware. 817 F.3d at 757–58. Mylan had filed an Abbreviated New Drug Application (ANDA) with the FDA seeking approval to market generic versions of the plaintiffs' drugs. *Id.* Mylan was incorporated, had its a principal place of business, and had prepared the ANDAs in West Virginia. *Id.* at 758. In the ensuing litigation in Delaware, Mylan moved to dismiss both actions under Rule 12(b)(2) on personal jurisdiction grounds. *Id.* Both judges denied Mylan's motions to dismiss and then certified their decisions for interlocutory review. *Id.* at 759. The Federal Circuit affirmed, holding that Mylan was subject to specific personal jurisdiction in the District of Delaware due to the nature of the infringement claims at issue. *Id.* at 760–64. In

affirming, the Federal Circuit emphasized that both plaintiffs were asserting infringement based on Mylan's ANDA filings under 35 U.S.C. § 271(e)(2). *Id.* at 760. For purposes of the Court's minimum-contacts analysis, the nature of the infringement claim was key. The Federal Circuit emphasized that the standard was satisfied because Mylan's ANDA filings meant that it had engaged in injury-causing conduct in all states (including Delaware) because ANDA filings themselves constitute formal acts of infringement under § 271(e)(2). *See id.* at 759–60.

Plaintiffs' claims here do not implicate 35 U.S.C. § 271(e). The amended complaint invokes only § 271(a), (b), (c), and (g). (*See* ECF No. 25 ¶¶32, 41, 45, 52.) Under § 271(a), (b), (c), and (g), whoever "makes, uses, offers to sell, or sells" patented inventions, their material parts or processes; or "actively induces infringement" infringes a patent. Unlike § 271(e), Plaintiffs' claims do not necessarily encompass Nexus having engaged in infringing conduct in Wisconsin. Indeed, Plaintiffs do not allege that Nexus manufactured, used, offered to sell, or sold the ephedrine syringe products in Wisconsin prior to the filing of this lawsuit on March 5, 2023. Plaintiffs' specific jurisdiction arguments are instead premised on the contention that Nexus has admitted that "sales *after* [March 5, 2023] have occurred." (*See* ECF No. 25; ECF No. 34 at 14 (citing ECF No. 33-5 ¶28) (emphasis added).)

A fundamental flaw with Plaintiffs' approach is that this Court's jurisdiction is based on the state of affairs at the time the initial complaint was filed. *Newman-Green,* 490 U.S. at 831–32. Actions after the complaint was filed are irrelevant to the personal jurisdiction analysis. *See id.*; *Walton v. United States*, 80 Fed. Cl. 251, 262 (2008), *aff'd*, *Walton v. United States*, 551 F.3d 1367 (Fed. Cir. 2009). While a plaintiff may amend its complaint to cure "[d]efective allegations of jurisdiction," 28 U.S.C. § 1653, it must establish that the Court had jurisdiction at the time the original complaint was filed because an amended pleading does not alter the jurisdictional facts that existed at the time of the original complaint. *See Newman-Green*, 490 U.S. at 831. Plaintiffs do not dispute this and insist they did not file the amended complaint to overcome jurisdictional issues and that their initial complaint is sufficient to show jurisdiction. (ECF No. 34 at 16.) They nevertheless insist that post-complaint facts may support personal jurisdiction. (*Id.* (citing *Logan Prods. Inc., v. Optibase, Inc.*, 103 F.3d 49, 51–53 (7th Cir. 1996).) This argument is incorrect. The Seventh Circuit's *Logan* decision holds that "contacts occurring after the event underlying the lawsuit [may be] relevant," not contacts taking place after the complaint was filed. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 909–10 (N.D. Ill. 1999) (holding that

"[t]he filing of the complaint … stops the [personal jurisdiction] clock from running"). If the Court lacked jurisdiction when the complaint was filed, it lacks authority to adjudicate the matter and subsequent events cannot remedy that defect. As the Seventh Circuit has explained, "[c]rucial to the minimum contacts analysis is showing that the defendant 'should reasonably anticipate being haled into court [in the forum State]' because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities there." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)) (alterations in original) (internal citations omitted). A party cannot be said to have reasonably anticipated litigation in a forum based on future events. Thus, post-complaint facts cannot fairly support the existence of personal jurisdiction. *Apple, Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022) (quoting *Rudzewicz*, 471 U.S. at 474).

In moving to dismiss, Nexus offers the sworn declaration of its Chief Operating Officer, Omair Ahmed, who confirms that Nexus did not in fact sell any ephedrine sulfate products in Wisconsin (or indeed anywhere in the United States) until after March 5, 2023. He also reports under penalty of perjury that none of Nexus's products were manufactured, offered for sale, sold, or imported into Wisconsin as of that same date. (ECF No. 33-5 at ¶¶28–29.) Plaintiffs have no rebuttal for this sworn testimony. Instead, they point to mere allegations in their complaint, and, even worse, allegations that it made merely "[o]n information and belief." These speculative assertions extrapolate from an earlier press release from Ahmed stating that Nexus was "incredibly excited to introduce" the products, which would be "available immediately" as of March 1, 2023. (ECF No. 25 ¶¶28–29; ECF No. 34 at 14–15 (citing ECF No. 25-3 at 3–4).) Ahmed's statements in the press release are not inconsistent with the sworn testimony he offers this Court. And Plaintiffs cannot defeat that his testimony with speculative allegations made on unsupported information and belief. Having asserted that specific jurisdiction exists based on Nexus's alleged conduct in Wisconsin, it is incumbent on plaintiffs to support their allegations with evidence. *See Autogenomics*, 566 F.3d at 1017. They have not done so. Their opposition affidavits and exhibits do not rebut Ahmed's direct testimony.

Plaintiffs point to Nexus documents that tout the opening of its Pleasant Prairie facility, but those exhibits are notably silent on any infringing activity—the manufacture, offer for sale, sale, or importation of ephedrine sulfate—in *Wisconsin*. (*See* ECF Nos. 34-1–6.) The only exhibit that mentions the infringing syringes—in general, and not in any way connected to the Pleasant Prairie

site—lists the units of the syringes sold in April and May 2023, *after* the complaint was filed. (ECF No. 34-7.) Plaintiffs are of course entitled to inferences in their favor, but those inferences must be reasonable. *See Autogenomics*, 566 F.3d at 1018. Ahmed's sworn declaration states directly that Nexus did not sell or offer to sell any of its sulfate ephedrine products in the United States prior to March 5, 2023. (ECF No. 33-5 ¶27.) Plaintiffs have thus failed to carry their burden of establishing a prima facie case of minimum contacts in this district.

Plaintiffs also argue that "[a]t a minimum," they should be allowed to conduct jurisdictional discovery. (ECF No. 34 at 16–17.) Seventh Circuit law applies to requests for jurisdictional discovery. *See Autogenomics*, 566 F.3d at 1021–22. This request will be denied for two reasons. First, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction *before* discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (emphasis added). Plaintiffs have failed to do so here. Their speculative allegations are insufficient. Moreover, Plaintiffs ask to conduct jurisdictional discovery in their briefing and not by formal motion. Simply mentioning the request briefly in their opposition brief is not enough. *See Autogenomics*, 566 F.3d at 1022 (affirming district court's denial of jurisdictional discovery because issue only brought up in opposition brief to a motion to dismiss).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Nexus's Motion to Dismiss the First Amended Complaint, ECF No. 32, is **GRANTED**. The complaint is dismissed for lack of personal jurisdiction. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Nexus's Motion to Dismiss the complaint, ECF No. 18, is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Motion to Restrict Document, ECF No. 30, is **GRANTED**.

Dated at Milwaukee, Wisconsin on March 25, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge